**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                              :
CHRISTOPHER E. BROWN,         :    Civil Action
        Plaintiff,           :    No. 08-5145(NLH)
                              :
     v.                       :    OPINION
                              :
SHOWBOAT ATLANTIC CITY        :
PROPCO, LLC, et al.,          :
        Defendants.          :
_____:
```

**APPEARANCES:**
JAMES JUSTIN GRIFFIN
KU & MUSSMAN PA
64 ORIOLE STREET
PEARL RIVER, NY 10965
*Attorney for Plaintiff*

RUSSELL L. LICHTENSTEIN
NANCY ANN VALENTINO
COOPER, LEVENSON, APRIL, NIEDELMAN & WAGENHEIM, PA
1125 ATLANTIC AVENUE
THIRD FLOOR
ATLANTIC CITY, NJ 08401-4891
*Attorneys for Defendants*

**HILLMAN, District Judge**

Plaintiff, Christopher Brown, alleges that Defendants, Showboat Atlantic City Propco, LLC and Atlantic City Showboat, Inc. violated the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. (hereinafter "ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. Plaintiff alleges he encountered discriminatory barriers at the Showboat that affected his ability to fully utilize and enjoy the hotel and casino. Defendants contend that Plaintiff not only lacks standing in this case to seek enforcement of the ADA, but also cannot establish a

*prima facie* case of discrimination.  Defendants filed a Motion for Summary Judgment against Plaintiff.  Conversely, Plaintiff filed a Cross-Motion for Summary Judgment against Defendants. For the reasons expressed below, Defendants' Motion for Summary Judgment will be denied and Plaintiff's Cross-Motion for Summary Judgment will be granted in part and denied in part.

## I.   **JURISDICTION**

This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over his related state law claims under 28 U.S.C. § 1367.

## II.   **BACKGROUND**

Plaintiff states he is disabled due to "arthrogryposis," a rare disease that not only causes dexterity issues with his hands and arms, but also substantially limits his ability to walk. This disability requires him to utilize a wheelchair for mobility.  Defendants dispute whether Plaintiff has a disability because he failed to provide any medical evidence indicating he is disabled.

Plaintiff resides in Bayside, New York and works for LMC Wireless in Manhattan, New York, New York.  He does not have any pre-existing business or familial connections to the Atlantic City area.  He considers himself an advocate for the disabled and will file a lawsuit when he discovers a business that is

2

noncompliant with the ADA.[1]

In July 2008, Plaintiff and a friend traveled to the Showboat Casino and Resort located in Atlantic City, New Jersey. While this was Plaintiff's first trip to the Showboat, he previously visited Atlantic City in 2006. Plaintiff stated in his deposition that he planned to stay overnight at the Showboat but did not have a reservation. During his trip Plaintiff personally encountered several barriers to access throughout the hotel and casino. These barriers included improper: ramps, walkways, restrooms, parking, sales and service counters, guestrooms and gaming tables. Plaintiff spent several hours documenting these barriers. According to Plaintiff, the barriers prevented his full use and enjoyment of the property. Defendants dispute whether Plaintiff encountered any barriers because he was unable to provide concrete details pertaining to their locations. At the time of his visit to the Showboat, Plaintiff did not file any complaints with Defendants regarding the barriers he encountered, nor, at any time subsequent to his trip, did he contact the Showboat about the difficulties he encountered.

During his deposition testimony, Plaintiff emphasized his intentions to return to the Showboat. However, he did not have any specific plans or a definite set date of return. In May 2010, Plaintiff submitted an affidavit with his Cross-Motion for

_____

[1] Plaintiff has filed over 40 ADA related lawsuits.

3

Summary Judgment where he averred his intent to travel to Atlantic City twice each year during the spring and summer and visit the Showboat on each occasion.  Defendants contend this affidavit is a sham affidavit created to generate a genuine issue of material fact and preclude entry of summary judgment on behalf of Defendants.

On October 21, 2008, Plaintiff commenced this suit against Defendants.  In response, Defendants filed a motion to dismiss for lack of standing.  Magistrate Judge Schneider, in an Opinion dated March 11, 2009, denied the motion to dismiss, noting that Defendants could re-challenge Plaintiff's standing at a later stage of the case.  After conclusion of discovery, Defendants moved for summary judgment.  Four days later Plaintiff filed a Cross-Motion for Summary Judgment against Defendants.  On October 22, 2010, the Court ordered Plaintiff to submit a supplemental affidavit detailing his post-deposition trips to the Showboat. Plaintiff complied with the Order, and on November 9, 2010, submitted an affidavit and other documentation of an April 2010 trip to Atlantic City.

### III. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations,

5

general denials, or vague statements. <u>Saldana v. Kmart Corp.</u>, 260
F.3d 228, 232 (3d Cir. 2001).

**IV.  Discussion**

Title III of the ADA proscribes discrimination against
individuals with disabilities in places of public accommodation.
*See* 42 U.S.C. § 12182(a).  Discrimination includes "a failure to
remove architectural barriers . . . that are structural in
nature, in existing facilities . . . where such removal is
readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).  The ADA
provides a private right of action for injunctive relief to "any
person who is being subject to discrimination on the basis of
disability." 42 U.S.C. § 12188(a)(1).  Under Title III of the
ADA, aside from attorney's fees, the right of action for
injunctive relief is the only remedy available for a plaintiff.
<u>Id.</u>; <u>D.B. v. Bloom</u>, 896 F. Supp. 166, 172 (D.N.J. 1995) (noting
that the court may award reasonable attorney's fees and costs
pursuant to 42 U.S.C. § 12188(a)(1)).

**A.   Plaintiff's May 2010 Affidavit Filed With His Cross-
       Motion For Summary Judgment**

Defendants contend Plaintiff's May 2010 affidavit, filed as
an exhibit to his Cross-Motion for Summary Judgment, contradicts
his prior disposition testimony, and, thereby, is a sham
affidavit created solely to defeat summary judgment.[2]  In order

_____

[2]  The bonafides of Plaintiff's affidavit is a threshold
issue the Court must first address before we consider whether

6

to facilitate our determination of whether Plaintiff's May 2010
affidavit is a sham, on October 22, 2010, the Court ordered
Plaintiff to submit a second affidavit supplementing the
averments of his May 2010 affidavit.  Plaintiff complied and
submitted an affidavit detailing an April 2010 trip to the
Showboat.

The Federal Rules of Civil Procedure are silent on how a
court should treat, for purposes of summary judgment, a party's
affidavit that is contrary to his deposition testimony. Jiminez
v. All Am. Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007).
To address and remedy this issue, courts developed the "sham
affidavit" doctrine.[3]  This doctrine "refers to the trial courts
'practice of disregarding an offsetting affidavit that is
submitted in opposition to a motion for summary judgment when the
affidavit contradicts the affiant's prior deposition testimony.'"

---

Plaintiff has standing to pursue his ADA claim.

[3] The Second Circuit was the first court to establish this
doctrine in Perma Research & Development Co. v. Singer Co., 410
F.2d 572, 577-78(2d Cir. 1969). Baer v. Chase, 392 F.3d 609, 624
(3d Cir. 2004).  The Second Circuit recognized that when faced
with an unexplained contradiction between a plaintiff's prior
affidavit and a subsequent deposition, a court should disregard
the affidavit and perceive it as a "sham." Perma Research & Dev.
Co., 410F.2d at 578. ("If a party who has been examined at length
on deposition could raise an issue of fact simply by submitting
an affidavit contradicting his own prior testimony, this would
greatly diminish the utility of summary judgment as a procedure
for screening out sham issues of fact").  All Courts of Appeals,
including the Third Circuit, have subsequently adopted some
aspect of this doctrine. See Jiminez, 503 F.3d at 252 (noting the
Circuits that have adopted the "sham affidavit" doctrine).

Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (quoting

Shelcusky v. Garjulio, 797 A.2d 138, 144 (2002)); *see* In re CitX

Corp., Inc., 448 F.3d 672, 679 (3d Cir. 2006) (opining that a

sham "affidavit comes in later to explain away or patch up an

earlier deposition in an attempt to create a genuine issue of

material fact").  The doctrine arises out of a court's

recognition that depositions are more reliable than affidavits,

largely because depositions are solely a party's testimony while

affidavits are the products of counsel and drafted almost

exclusively for a specific purpose. Jiminez, 503 F.3d at 253-54.

     The sham affidavit doctrine prevents the creation of a

material issue of fact for the purpose of defeating summary

judgment. Baer, 392 F.3d at 624; Martin v. Merrell Dow Pharm.,

Inc., 851 F.2d 703, 705 (3d Cir.1988); *see* Jiminez, 503 F.3d at

253 ("A sham affidavit is a contradictory affidavit that

indicates only that the affiant cannot maintain a consistent

story or is willing to offer a statement solely for the purpose

of defeating summary judgment").  A genuine issue of material

fact cannot be raised by a sham affidavit because "it is merely a

variance from earlier deposition testimony" and a reasonable jury

would never "rely on it to find for the nonmovant." Id. (noting

the Supreme Court recognizes a court's power to grant summary

judgment when the court concludes that the only issue of material

fact arises because of a sham affidavit).  Consequently, a trial

court can enter summary judgment and disregard an affidavit
offered solely for the purposes of defeating summary judgment
when no reasonable jury would "accord that affidavit evidentiary
weight." Id.; see Barnes v. Office Depot, Inc., No. 08-1703, 2009
WL 4133563, * 13 (D.N.J. Nov. 24, 2009) ("Disregarding sham
affidavits serves the important purpose of preventing the serious
impairment of the objectives of summary judgment") (internal
quotations removed); see also Jiminez, 503 F.3d at 253 ("[T]he
mere existence of a scintilla of evidence in support of the
plaintiff's position will be insufficient; there must be evidence
on which the jury could reasonably find for the plaintiff")
(quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986)).

A mere discrepancy between deposition testimony and a
subsequent contradictory affidavit does not require the court to
immediately disregard the affidavit. Baer, 392 F.3d at 624-25.
Before a court may deem a contrary affidavit a sham, it shall
apply a "flexible approach." Jiminez, 503 F.3d at 254.  This two-
part inquiry focuses on whether an affiant can prove the
bonafides of his affidavit through either 1) independent evidence
on the record[4] or 2) a satisfactory explanation for the
discrepancy between the prior deposition testimony and the

---

[4]  If an affiant produces independent or other collaborating
evidence that will bolster an otherwise questionable affidavit,
courts cannot consider the affidavit a sham. Baer, 392 F.3d at
625.

affidavit.[5] <u>Id.</u>; <u>David's Bridal, Inc. v. The House of Brides,</u>
<u>Inc.</u>, No. 06-5660, 2010 WL 715437, * 5 (D.N.J. Feb. 23, 2010)
(citing <u>Jiminez</u>, 503 F.3d at 254).  An affiant's failure to
either explain contradictory statements or offer independent
bolstering evidence indicates the affidavit is a sham, thus
removing that impediment to the court's entry of summary
judgment. <u>Jiminez</u>, 503 F.3d at 254; <u>O'Bryant v. City of Reading</u>,
197 Fed.Appx. 134, 138 (3d Cir. 2006).

    An inherent requirement of a sham affidavit is that the
affiant's statement must contradict deposition testimony.
Statements in an affidavit that "merely . . . conflicts to some
degree with an earlier deposition" cannot be disregarded as
shams. <u>Baer</u>, 392 F.3d at 625 (internal quotation and citations
removed); *see* <u>Kennett-Murray Corp. v. Bone</u>, 622 f.2d 887, 894-95
(5th Cir. 1980) (noting the affidavit was not a sham because it
was not at odds nor did it conflict with the defendant's general
theory discussed in the deposition); *see also* <u>Ramirez v. United</u>
<u>Parcel Serv.</u>, No. 06-1042, 2009 WL 2883582, * 4 (D.N.J. September
3, 2009) ("[s]light variations in the timing and substance [may
be significant to determine whether the statute of limitations

---

    [5]  If an affiant provides a plausible explanation for the
discrepancy, a court will not disregard the affidavit for
purposes of summary judgment.  <u>Baer</u>, 392 F.3d at 624; *see* <u>Martin</u>,
851 F.2d at 705 (holding that in instances of confusion or
mistake, an affidavit may correct sworn deposition testimony and
can be sufficient to create a genuine issue of material fact).

bars relief]. . . but the variations are not as meaningful for determining whether the deposition testimony and the affidavit are consistent"). Similarly, an affidavit is not a sham if the affiant did not have all available information at the time of the deposition, or the subsequent affidavit clarifies or further elaborates upon ambiguous testimony. Barnes, 2009 WL 4133563 at * 13; *See* Maietta v. United Parcel Serv., Inc., 749 F. Supp. 1344, 1359 -1360 (D.N.J. 1990); *see also* Connolly v. Mitsui O.S.K. Lines (Am.) Inc., No. 04-5127, 2010 WL 715775, * 2 (D.N.J. March 1, 2010) (finding the "sham affidavit" doctrine inapplicable when the plaintiff testified she could not remember when her schedule changed, but knew it was contemporaneous to a statement that occurred in either 2001, 2002 or 2003, and in an affidavit Plaintiff later averred her schedule change occurred in 2003). Courts do not declare these affidavits shams because they do not flatly contradict deposition testimony and, therefore, a reasonable jury may find the affidavit credible and conclude that any discrepancy is inadvertent. Ragan v. Fuentes, No. 05-2825, 2007 WL 2892948, * 11 (D.N.J. September 28, 2007) (citing In re CitX Corp., Inc., 448 F.3d at 679-680 (opining that cross-examination during a deposition is a better method to discover flaws in a bogus affidavit)); Ramirez, 2009 WL 2883582 at * 4.

During his deposition, Plaintiff stated he "definitely intend[ed]" to return to the Showboat, but, at the time did not

have any "definite date" planned for his return. (Exhibit E, Doc.
53-8 at 173).  In response to defense counsel's follow-up
question on whether Plaintiff has any particular plans "right
now", Plaintiff responds "[t]oday would have been nice." (Id. at
173-74).  In his May 2010 affidavit filed approximately six and
one-half months later, Plaintiff emphasized he returned to "the
Showboat in March 2010 and plan[s] to return again in August,
2010." (Exhibit A, Doc. 53-2).  Plaintiff also stated that
"[g]oing forward, I intend to travel to Atlantic City during the
spring and summer and visit the Showboat on each occasion." (Id.)
Plaintiff also emphasized that in addition to his "intent to
return to the Showboat as a guest and a patron . . . [he]
intend[s] to return as an ADA tester to determine whether the
barriers to access have been fixed." (Id.)  Plaintiff, however,
did not submit any independent collaborating evidence of these
visits.  Defendants contend Plaintiff's May 2010 affidavit was
generated to create a genuine issue of material law and preclude
the entry of summary judgment on behalf of Defendants.

The lack of independent evidence collaborating Plaintiff's
return to the Showboat and the question of whether Plaintiff's
May 2010 affidavit is a sham prompted the Court to order
Plaintiff to submit a supplemental affidavit detailing all post
deposition visits to the Showboat.  Plaintiff submitted this
affidavit in November 2010.  In this affidavit, Plaintiff

corrected averments made in his May 2010 affidavit regarding a recent return visit to the Showboat.  In the November 2010 affidavit, Plaintiff indicated that when he made the May 2010 averments he "mistakenly believed" he "visited the Showboat in March 2010.  However after checking [his] records, [he] in fact visited the Showboat in April, not March, of 2010." (Doc. 61-1). In addition to this correction, Plaintiff detailed his April 2010 return visit to the Showboat.[6]  During the visit Plaintiff averred that he ate at the Canal Street Bread and Sandwich Co.[7] and gambled for approximately three hours, losing $250.00.[8] Plaintiff also reiterated his intent to return to Atlantic City in the spring and summer of 2011.

To determine whether a deposition and affidavit are contradictory, the Court should not isolate any particular statements. *See* Ragan, 2007 WL 2892948 at * 10 (focusing on the

---

[6]  In addition to the affidavit, Plaintiff submitted other evidence of his April 2010 visit to the Showboat.  This evidence includes an affidavit from Plaintiff's friend who accompanied him to the Showboat and a copy of Plaintiff's friend's credit card statement, which indicates the purchase of gasoline in Linden, New Jersey.

[7]  Plaintiff averred that because of his disability he had trouble using the touch screen computers to order his meal.

[8]  Plaintiff opined that he utilized his Showboat players reward card while gambling at the casino.  Although an updated gaming history statement is unavailable until the "end of the year," Plaintiff stated that when he contacted customer relations he was told that Showboat has a record of him gambling on April 18, 2010.

entirety of the relevant deposition testimony to conclude the affidavit did not flatly contradict earlier deposition testimony).  Rather, we must examine the statements regarding Plaintiff's intended return to Atlantic City in their totality.  After an examination of these statements, the Court cannot conclude as a matter of law that the May 2010 affidavit flatly contradicts earlier deposition testimony.  Defendants erroneously view Plaintiff's statements in isolation.  They conclude the statements are contradictory because Plaintiff stated in his deposition that he did not have any future plans to return to Atlantic City and then in his May 2010 affidavit described future plans.  This view, however, entirely ignores Plaintiff's deposition testimony expressing his intent to return to Atlantic City.  When viewed in its totality, Plaintiff's deposition testimony indicates that Plaintiff had at the time an intention to return to Atlantic City, but had not yet made any specific plans to return.  Furthermore, defense counsel only asked Plaintiff whether he had any plans "right now."  This question, however, does not foreclose the possibility that Plaintiff would develop future plans another day. *See* Fisher v. Ciba Specialty Chemicals Corp., No. 03-0566, 2007 WL 2995525 * 4 (S.D. Ala. Oct. 11, 2007) ("A necessary prerequisite to the sham affidavit rule is that the party seeking to invoke it must have asked the necessary follow-up questions to eradicate any 'wiggle room' in

14

the deposition answers given"). Consequently, the May 2010 affidavit merely supplements Plaintiff's prior deposition testimony regarding when and how often he intends to return to Atlantic City and the Showboat. In his deposition, Plaintiff expressed a desire to return to Atlantic City in the future, but did not have any specific plans. Plaintiff's May 2010 affidavit clarifies and elaborates upon his future intentions and indicates when he will return to Atlantic City. *See* Solomon v. Waffle House, Inc., 365 F. Supp.2d 1312, 1319-20 (N.D. Ga. 2004) (holding that plaintiff's deposition testimony that he had no plans to return to defendant's restaurant was not contradictory of his affidavit that stated he would return to defendant's restaurant when it took measures to prevent discriminatory practices). The bonafides of Plaintiff's May 2010 affidavit are further evidenced by his November 2010 affidavit, which detailed Plaintiff's April 2010 return to the Showboat. Based upon the Court's analysis of the sham affidavit doctrine and Plaintiff's subsequent affidavit, we cannot conclude that the statements in the deposition contradict the statements in the May 2010 affidavit. Although the statements may conflict, the sham affidavit rule is inapplicable because a reasonable fact-finder may (1) conclude that Plaintiff intends to return every year or (2) discredit the affidavit and conclude that Plaintiff does not

currently intend to return to Atlantic City.[9]

---

[9]  In <u>Access 4 All, Inc. v. Boardwalk Regency Corp.</u>, No. 08-3817, 2010 WL 4860565 (D.N.J. Nov. 23, 2010) a court in this district recently confronted a case factually similar to the matter currently pending.  In <u>Boardwalk Regency Corp.</u>, the plaintiff visited an Atlantic City casino where he allegedly encountered barriers to access in violation of the ADA.  During his deposition testimony the plaintiff indicated a future intent to return to the casino, but did not have any specific plans.  In a subsequent affidavit the plaintiff stated his intentions to return to gamble and serve as an ADA tester when the casino was fully accessible for a person wheelchair bound.  Defendants contended this affidavit was a sham and should have been disregarded because it conflicted with prior deposition testimony and was created solely for the purposes of precluding entry of summary judgment.  To resolve this issue the <u>Boardwalk Regency Corp.</u> court concluded an evidentiary hearing was necessary.

In the present matter, despite similar facts, we conclude an evidentiary hearing is unnecessary.  The <u>Boardwalk Regency Corp.</u> court relies on several cases, such as <u>Bischoff v. Osceola County</u>, 222 F.3d 874, 879 (11th Cir. 2000), <u>United States v. 1998 BMW "I" Convertible Vin No. WBABJ8324WEM20855</u>, 235 F. 3d 397, 400 (8th Cir. 2000) and <u>Martin v. Morgan Drive Away, Inc.</u>, 665 F.2d 598, 602 (5th Cir. 1982), in deciding to conduct an evidentiary hearing.  <u>Boardwalk Regency Corp.</u>, 2010 WL 4860565, at * 8 n. 16.  A close examination of three of these cases, however, reveals they are factually inapposite to the pending matter.  In all three cases, a direct factual contradiction existed between the parties' evidence on standing.  Therefore, an evidentiary hearing was necessary to resolve the dispute.

Before concluding whether an evidentiary hearing is necessary, however, a court should first determine whether the evidence is contradictory.  In the current matter, Plaintiff's affidavit and deposition testimony are the sole evidence relating to standing.  Merely contesting an affidavit does not automatically create a disputed factual issue necessary for resolution with an evidentiary hearing.  Rather, a court must credit the affidavit unless and until it concludes that it is a sham.  This Court does not interpret the above referenced cases as either requiring or favoring an evidentiary hearing at this stage of the litigation solely because a party contests the other party's credibility.  An evidentiary hearing is necessary to resolve questions of standing only when the Court cannot determine from the facts on record whether standing has been met.  Because the Court concluded above that the facts are not contradictory, an evidentiary hearing is, therefore, unnecessary

**B.    Standing**

Defendants challenge Plaintiff's standing to proceed on his ADA discrimination claim.  Before a court may reach the merits of a case, a plaintiff must satisfy the Constitution's Article III § 2 "case or controversy" requirement. *See* <u>Summers v. Earth Island Inst.</u>, ___ U.S. ___, 129 S.Ct. 1142, 1148 (2009).  This requirement is enforced through several justiciability doctrines. <u>Toll Bros., Inc. v. Twp. of Readington</u>, 555 F.3d 131, 137 (3d Cir. 2009).  Standing is one of these "several [justiciability] doctrines that reflect [the case or controversy's] fundamental limitation" on a court's power. <u>Summers</u>, 129 S.Ct. at 1149; *see* <u>Horne v. Flores</u>, ___ U.S. ___, 129 S.Ct. 2579, 2592 (2009) ("[W]e consider the threshold issue of standing - "an essential and unchanging part of the case-or-controversy requirement of Article III") (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)); *see also* <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is

---

and premature.

Despite the perceived appearance of impropriety by Plaintiff, we cannot discredit Plaintiff's May 2010 affidavit solely because it was created when Defendants moved for summary judgment.  As detailed above, any inconsistency between the deposition testimony and affidavit is sufficiently explained. The Court notes, however, that because Plaintiff's only remedy is injunctive relief, the Court is the fact-finder and during the fact-finding stage of this case, it will be up to the Court to conclude whether Plaintiff's intentions to return are credible and what impact that credibility determination has, if any, on Plaintiff's standing.

entitled to have the court decide the merits of the dispute or of particular issues"). The standing doctrine assures an appropriate judicial resolution through requiring a plaintiff to possess a sufficient personal stake in the litigation, ensuring a live case or controversy. Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004); *see* Elk Grove United Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. The standing requirement is born partly of an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government") (quotations, citations omitted). Despite the significance of an issue, federal courts do not have jurisdiction and cannot proceed unless the plaintiff establishes standing. *See* Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257-58 (3d Cir. 2009).

A plaintiff must establish standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561. At each subsequent stage in the litigation, the quantum of proof necessary to establish standing increases. W.G. Nicholas, Inc. v.

18

Ferguson, No. 01-834, 2002 WL 1335118, * 9 n.15 (E.D. Pa. June 7, 2002) (citing Lujan, 504 U.S. at 531).  At the summary judgment phase a plaintiff must prove standing through specific facts by affidavit, deposition testimony or other evidence. Tandy, 380 F.3d at 1284; see Ferguson, 2002 WL 1335118 at * 9 n. 15 ("Thus, at the summary judgment stage, 'the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken as true") (quoting Fed. R. Civ. R. 56(e)).  The failure to demonstrate each element of standing results in granting summary judgment in favor of a defendant.

The doctrine of standing embodies two strands, constitutional and prudential. Newdow, 542 U.S. at 11.  The prudential component, a judicially self-imposed limitation, requires courts to decline to exercise jurisdiction over litigants asserting the rights of another, litigants' generalized grievances that are more appropriately addressed by the elected branches of government or litigants' complaints outside the zone of interests protected by the law. Id. at 12.  Defendants do not contend that Plaintiff failed to satisfy the prudential standing requirements, nor does the Court raise sua sponte any prudential concerns over Plaintiff's claim.

The Constitutional component of standing derives directly from Article III. Clark v. Burger King Corp., 255 F. Supp. 2d

334, 341 (D.N.J. 2003).  In order to establish standing, the

Third Circuit has articulated that:

> (1) the plaintiff must have suffered an injury in fact-
> an invasion of a legally protected interest which is
> (a) concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical; (2) there
> must be a causal connection between the injury and the
> conduct complained of-the injury has to be fairly
> traceable to the challenged action of the defendant and
> not the result of the independent action of some third
> party not before the court; and (3) it must be likely,
> as opposed to merely speculative, that the injury will
> be redressed by a favorable decision.

Ballentine v. U.S., 486 F.3d 806, 814 (3d Cir. 2007) (citing

Society Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175-

76 (3d Cir. 2000)).  A party's failure to prove any of the

aforementioned three elements deprives the party of standing.

Cottrell v. Zagami, LLC., No. 08-3340, 2009 WL 1416044, * 3

(D.N.J. May 20, 2009).  Although all three elements are

"constitutionally mandated, the injury-in-fact element is often

determinative." Toll Bros., 555 F.3d at 138.

Defendants only argue that Plaintiff failed to establish an

injury in fact, the first of three elements.  The Court agrees

that Plaintiff established the second and third elements, the

existence of a connection between a plaintiff's injury and a

defendant's actions and that a favorable decision will redress

Plaintiff's injury.

### 1. Injury in Fact

Plaintiff's case arises under Title III of the ADA.  The

sole relief available for Defendants' alleged ADA violations is prospective injunctive relief. *See* 42 U.S.C. § 12188(a). A plaintiff's satisfaction of the injury in fact requirement varies depending on whether he seeks retrospective or prospective relief. *See* City of Los Angelos v. Lyons, 461 U.S. 95, 102-03 (1983).  To satisfy the injury in fact requirement when seeking prospective injunctive relief, the plaintiff must demonstrate a "real and immediate threat" of future injury. Access 4 All, Inc. v. Absecon Hospitality Corp., No. 04-6060, 2006 WL 3109966, * 5 (D.N.J. Oct. 30, 2006); *see* Lyons, 461 U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again").  The Third Circuit has opined that:

> [p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . . [I]n order to obtain standing for prospective relief, the plaintiff must establish a real and immediate threat that he would again be [the victim of the allegedly unconstitutional practice].

Brown v. Fauver, 819 F.2d 395, 400 (3d Cir.1987) (quoting O'Shea v. Littleton, 414 U.S. 488, 495 (1974)) (internal quotations removed).  The Third Circuit has specifically found these principles equally applicable in the context of Title III of the ADA. *See* Doe v. Nat'l Bd. of Med. Exam'r, 199 F.3d 146, 153 (3d Cir. 1999).  In other words, injunctive relief is only appropriate when the Plaintiff establishes a sufficient

21

likelihood that he will be wronged again in a similar fashion. D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1036 (9th Cir. 2008). "Some day" intentions without any description of concrete plans or any indication beyond mere speculation on when some day will occur, does not support a finding for "actual or imminent" injury. Lujan, 504 U.S. at 564.

Plaintiff must prove he suffered an injury in fact that is concrete and particularized.  The Third Circuit has not specifically addressed the scope of the "actual or imminent" injury requirement in the context of suits for injunctive relief under Title III of the ADA.  In other contexts, however, the Third Circuit has emphasized that a Plaintiff must suffer a "palpable and distinct harm" that "must affect the plaintiff in a personal and individual way." Toll Bros., Inc., 555 F.3d at 138 (quoting Lujan, 504 U.S. at 560 n. 1).  The "proper analysis" focuses on whether Plaintiff suffered an injury, not whether Defendant violated the ADA. Doe, 199 F.3d at 153; *see* John G. Roberts, Jr., *Article III Limits on Statutory Standing*, 42 DUKE L.J. 1219, 1223 (1993) ("Although it is easier to define injury in some cases than in other, the occasional difficulty of the enterprise is hardly reason to abandon it altogether-to throw up one's hands and announce that an injury standard 'can have no ascertainable meaning'").

To determine whether a future injury is concrete and

particularized, several New Jersey District Courts have applied a four-factor test that focuses on the likelihood of plaintiff's return to the defendant's place of public accommodation.[10]  The four factors include: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel. Dempsey v. Pistol Pete's Beef N Beer, LLC., No. 08-5454, 2010 WL 2674436, * 4 (D.N.J. June 29, 2010); Zagami, 2009 WL 1416044 at * 3; Disabled Patriots of Am., Inc. v. City of Trenton, No. 07-3165, 2008 WL 4416459, * 3 (D.N.J. Sept. 24, 2008); Absecon Hospitality Corp., 2006 WL 3109966 at * 5; Access 4 All, Inc. v. 539 Absecon Blvd., No. 05-5624, 2006 WL 1804578, * 3 (D.N.J. June 26, 2006).  The totality of these four factors helps the court determine whether a plaintiff established a concrete and particularized threat of injury that is capable of repetition.

## A. Plaintiff's Proximity to Defendants

The first factor focuses on the proximity between the plaintiff and defendant.  Generally, when a plaintiff resides more than 100 miles from the defendant, courts conclude the

---

[10]   Courts in other jurisdictions have also applied the same four-factor test. See e.g., Molski v. Arby's Huntington Beach, 359 F. Supp.2d 938, 947 n. 10 (C.D. Cal. 2005); Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd., No. 05-1307, 2005 WL 2989307, * 3 (N.D. Tex. Nov. 7, 2005); Betancourt v. Ingram Park Mall, L.P., ___ F. Supp. 2d ___, ___, No. SA-10-CV-029-XR, 2010 WL 3211092, * 7 (W.D. Tex. Aug. 10, 2010).

likelihood of a plaintiff's return diminishes. <u>Disabled Patriots of Am., Inc.</u>, 2008 WL 4416459 at * 4.  "[A]s the distance between a plaintiff's residence and a public accommodation increases, the potential for the occurrence of future harms decreases." <u>Id.</u> (quoting in part <u>Molski v. Kahn Winery</u>, 405 F. Supp. 2d 1160, 1163-64 (C.D. Cal. 2005).  When the place of accommodation is a hotel, however, proximity is less determinative than in other contexts, such as retail establishments or restaurants. <u>Absecon Hospitality Corp</u>, 2006 WL 3109966 * 6; <u>539 Absecon Blvd.</u>, 2006 WL 1804578 at *3; <i>see</i> <u>Disabled Patriots of Am., Inc.</u>, 2008 WL 4416459 at * 4 (noting that the 100-mile rule does not apply to hotels and other facilities that specifically cater to travelers).  The 100-mile rule is inapplicable to hotels because of the nature of the business, which is to cater to individuals traveling. <i>See</i> <u>539 Absecon Blvd.</u>, 2006 WL 1804578 at * 3. Hotels, especially ones located in a tourist destination or are destinations themselves, attract individuals that reside throughout the country.  Despite their location and how far a plaintiff resides, a plaintiff may still return to take advantage of the specific benefits of the hotel or tourist destination. Proximity, therefore, loses its usefulness to gauge a plaintiff's likelihood of return.  Courts have found this factor inapplicable when the defendant's place of accommodation is a hotel because it "neither injured or advanced" Plaintiff's claim. <u>Id.</u> (citing

24

<u>Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.</u>, No. 05-1307, 2005 WL 2989307, * 3 (N.D. Tex. Nov. 7, 2005)).

Neither party disputes Plaintiff's residence in Bayside, New York and employment for LMC Wireless located in Greenwich Village, Manhattan, New York.  Defendants contend, however, that because the distance between the Showboat Casino and Plaintiff's home or place of employment exceeds 100 miles, the Court should conclude that Plaintiff's likelihood of future harm is unlikely and weigh this factor in favor of Defendants.  Defendants' argument, however, is erroneous.  As noted above, in the context of hotels and tourist destinations, a distance greater than 100 miles does not foreclose Plaintiff's claim for lack of standing. Defendants operate a hotel and casino and, according to Plaintiff, advertise their property as a "world-class entertainment destination [where] [t]he music is jumping, slots are pumping and the party has just begun." (Doc. 54 at 8).  As evidenced by this advertisement, Defendants view themselves as a tourist destination.  Furthermore, Defendants specifically cater to travelers through incentive programs and a bus terminal that routinely receives visitors from New York and other states.  The Court concludes the first factor, Plaintiff's proximity to Defendants, neither injures or advances his claim because the Showboat is a hotel and tourist destination that caters to travelers.

25

## B. Plaintiff's Past Patronage

A plaintiff may establish a likelihood of future injury through past patronage of a defendant's place of accommodation. This factor focuses on whether and how often a plaintiff visited defendant. *See* Clark, 255 F. Supp.2d. at 343.  Unless the plaintiff can demonstrate a specific connection to the establishment, lack of past patronage negates a possibility of future injury.[11] Disabled Patriots of Am., 2008 WL 4416459 at * 5; *see* Molski v. Kahn Winery, 405 F. Supp.2d 1160, 1164 (D.N.J. 2005) (opining that the "lack of a history of past patronage seems to negate the possibility of future injury at [that] particular location")(internal quotations and citations omitted).

Although Plaintiff traveled to Atlantic City for the first time in 2006, his first trip to the Showboat occurred in 2008. Subsequent to filing suit, Plaintiff traveled to the Showboat in

---

[11]   Some New Jersey District Courts have interpreted this factor differently. *See e.g.* 539 Absecon Blvd., LLC., 2006 WL 1804578 at * 4.  These courts have held that one visit is sufficient to constitute past patronage because a plaintiff should not have to "participate in a futile gesture [of revisiting a defendant's establishment] if she has actual knowledge of a defendant's failure to comply with ADA provisions." Id.  In these situations, however, the plaintiff specifically alleged that but for the architectural barriers and noncompliance with the ADA he would avail himself of the defendant's services. Id. In the present matter, Plaintiff did not make any such allegations.  Therefore, this Court will not address whether the past patronage factor should include an analysis of futility.

April 2010[12] and in his May 2010 affidavit noted his intentions
to visit again in August 2010.[13]  Beyond a desire to gamble at an
ocean side destination, Plaintiff does not have any connection to
Atlantic City or Defendants.  Although Plaintiff visited Atlantic
City in 2006, and made subsequent visits to Defendants since
filing his complaint, the Court cannot definitively conclude that
this factor weighs in favor of Plaintiff.  For precisely the same
reasons, however, nor can we conclude that this factor weighs in
favor of Defendant.[14]

.                    **C. Definitiveness of Plaintiff's Plan to Return**

The third factor and, in the Court's opinion, the most

---

[12]  In his May 2010 affidavit Plaintiff averred that he
returned to the Showboat in March 2010.  In his November 2010
supplemental affidavit, however, Plaintiff stated that after
checking his records he returned to the Showboat in April 2010,
rather than March as he originally claimed. New Jersey District
Courts are split on whether a plaintiff's return after the
Complaint was filed can constitute evidence of past patronage or
future intent to return. *Compare* Absecon Hospitality Corp., 2006
WL 3109966 at * 6 ("Additionally, the Court must consider
Plaintiff's past patronage of Defendant's hotel. According to the
Complaint, Plaintiff [] spent one night in the Hampton Inn in
2004. He also claims that he returned to the Hampton Inn during
June of 2006. . . .  This fact is undisputed, and thus this
element is satisfied"), *with* 539 Absecon Blvd., LLC., 2006 WL
1804578 at * 4 ("[A] plaintiff must have set forth a definitive
intent to return before filing his complaint in order to
establish standing").

[13]  Plaintiff noted in his November 2010 supplemental
affidavit that he was unable to visit the Showboat in August
2010.

[14] Even if this Court weighed this factor in Defendants'
favor, it is not dispositive and would not change our ultimate
decision regarding Plaintiff's standing.

determinative is a plaintiff's definitive plans to return.[15]
This factor garnishes the most weight because it arises from the
very "core" of the *Lujan* holding. Ferguson, 2002 WL 1335118 at *
12 ("[A]t the core of the *Lujan* holding is the proposition that a
party must have definite plans to do or visit "X" for that party
to have standing to seek equitable relief"). A plaintiff's
definitive indication that he will return to the defendant's
place of accommodation indicates a future injury that is concrete
and particularized.

A plaintiff's "mere expressed desire" to return does not
constitute or imply an intent to return. Disabled Patriots of

---

[15] As noted earlier, the Third Circuit has not specifically
addressed the scope of the "actual or imminent" injury
requirement in the context of suits for injunctive relief under
Title III of the ADA. Other circuits that have addressed this
issue, however, focus on whether a "plaintiff demonstrates an
intent to return to the geographic area where the accommodation
is located and a desire to visit the accommodation if it were
made accessible." D'Lil, 538 F.3d at 1037. Although the Ninth
Circuit held that a plaintiff merely needs to demonstrate an
intent to return, the court specifically noted in great detail
the plaintiff's specific plans to return to the area and the
facility. Id. at 1037-38 (noting that from 1993-2000 the
plaintiff visited the city 1-3 times a year, has three upcoming
trips to the area and has asserted that she "definitely plan[s]
on staying at the [hotel] when it is made accessible."). The
Fifth Circuit also opined on this issue. In Tandy, the Fifth
Circuit solely focuses on Plaintiff's intentions to return. The
Court concludes that speculative and someday intentions are not
sufficient to establish standing. A Plaintiff must allege
specific intentions to return. Tandy, 380 F.3d at 1284-85, 1287
(noting that an intent to ride the city buses "several times per
year" constitutes a concrete, present plan but "desires" to
utilize the bus system are insufficient to constitute standing).

Am., Inc., 2008 WL 4416459 at * 6.  Rather, a plaintiff must
demonstrate a "definitive, uncontested intent to return." Id.;
539 Absecon Blvd., 2006 WL 1804578 at *4.  This definitive
intent, however, must encompass specific plans, a general intent
to return is not sufficient to establish standing. Whitmore v.
Arkansas, 495 U.S. 149, 158 (1990) ("Allegations of possible
future injury do not satisfy the requirements of Art. III.  A
threatened injury must be certainly impeding to constitute injury
in fact") (internal quotations removed); Access 4 All v. Oak
Spring, Inc., No. 504CV75OCGRJ, 2005 WL 1212663, * 5 (M.D. Fl.
May 20, 2005) (noting that absent a specific intent to return, a
general statement expressing an intent to return is not
sufficient to establish standing).  In Lujan v. Defenders of
Wildlife, the Supreme Court focused on two affidavits and
concluded they did not express sufficient intent to return to
constitute a concrete and particularized injury.[16]  The Court
specifically held that an intent to someday return is a
speculative injury and insufficient to establish standing. Lujan,
504 U.S. at 564.

Several statements within Plaintiff's May and November 2010

---

[16]  In the first affidavit the plaintiff stated her
intentions to revisit Egypt and observe the endangered crocodile.
The second affidavit contained another plaintiff's statements of
her future intentions to return to Sri Lanka and view the
endangered elephant and leopard.  During her deposition, the
plaintiff averred that she had no specific plans to return, but
would return in the future. Lujan, 504 U.S. at 563-64.

affidavits indicate his future intentions to return to the
Showboat.  Plaintiff states that he "enjoy[s] visiting Atlantic
City and the Showboat to relax and gamble and enjoy[s] visiting
about twice a year." (Exhibit A, Doc. 53-2).  Accordingly, he
last returned to the Showboat in April 2010 and planned to return
again in August 2010, but was unable because he "was experiencing
acute pain in [his] wright wrist as a result of an accident where
[he] was thrown from [his] wheelchair onto the street." (Doc. 61-
1). "Going forward," Plaintiff "intend[s] to travel to Atlantic
City during the spring and summer and visit the Showboat on each
occasion." (Exhibit A, Doc. 53-2).  During the spring and summer
of 2011, Plaintiff intends to visit the Showboat and "try [his]
luck again at the tables." (Doc. 61-1).  These statements are not
the insufficient "someday" intentions described in Lujan.
Rather, Plaintiff specifically detailed his intentions to visit
Atlantic City twice a year and return to the Showboat "on each
occasion." (Id.)  Plaintiff's allegations in his affidavit are
sufficiently concrete to find a definiteness of future return.[17]
See Tandy, 380 F.3d at 1284-85 (noting that an intent to increase

---

[17] Plaintiff also states his intention to return as an ADA
tester.  A court in this district has specifically held that
intentions to return as an ADA tester are sufficient to establish
a future likelihood of return. Absecon Hospitality Corp., 2006 WL
3109966 * 7 ("Indeed, because Plaintiff [] is a frequent litigant
with the stated goal of ensuring ADA compliance, his claim of
intent to return to the Hampton Inn to do additional examinations
is made more, not less, credible").

the buses "several times per year" constitutes a concrete,
present plan).  The Court, therefore, weighs this factor in favor
of Plaintiff and finds that he demonstrated definitive plans to
return to the Showboat.

### D. Plaintiff's Frequency of Nearby Travel

The fourth and final factor focuses on the plaintiff's
frequency of travel near the defendant.  This factor weighs in
favor of the plaintiff if he demonstrates either pre-existing
business or familial association within the area of defendants'
place of accommodation. Disabled Patriots of Am., Inc., 2008 WL
4416459 * 6; 539 Absecon Blvd., LLC., 2006 WL 1804578 at * 4.
Establishment of a frequency of nearby travel is indicative of
the likelihood that a plaintiff would return to the defendant's
place of accommodation.

Plaintiff does not allege any familial or business
connections to the Atlantic City area.  None of his doctors
practice in the Atlantic City area nor does his work require him
to travel to that area.  Despite the lack of connection to
Atlantic City, Plaintiff argues that this factor should weigh in
his favor because Atlantic City is the only northeast destination
that provides the two activities he enjoys, legalized gambling
and relaxation at a seaside atmosphere.  Whether Atlantic City is
the only destination that offers the type of atmosphere Plaintiff
enjoys is irrelevant.  This factor does not focus on the

entertainment offerings of the Atlantic City area nor on how often Plaintiff travels to the area for pleasure.  Rather, this factor specifically focuses on Plaintiff's connections and whether they would require him to travel to the Atlantic City area.  The record is silent regarding Plaintiff's connections to the Atlantic City area.  The Court, therefore, concludes this factor weighs in favor of Defendants.

The totality of the four factors indicates that Plaintiff established standing at this stage of the litigation.  Although only one of the factors definitively favors Plaintiff, a finding in Plaintiff's favor does not require the alignment of all four factors.  New Jersey District Courts only intend the factor test to serve as a guide for whether a plaintiff established an intent to return to the defendant's place of business.  In this case, the totality of the factors, especially the factor indicating Plaintiff's definitive plans to return, unequivocally resolves the question.  The Court finds sufficient evidence that Plaintiff will return to the Showboat and would be subject to any architectural barriers in the facility.  Defendants' Motion for Summary Judgment will be denied.

**C. Prima Facie Case**

With regard to Plaintiff's ADA claim, Title III of the ADA provides, in relevant part,

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of

32

>the goods, services, facilities, privileges,
>advantages, or accommodations of any place of public
>accommodation by any person who owns, leases (or leases
>to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).[18]  To establish a *prima facie* case of

discrimination under the ADA, a plaintiff must prove:

>(1) he was discriminated against on the basis of
>disability; (2) in the full and equal enjoyment of the
>goods, services, facilities, privileges, advantages, or
>accommodations of any place of public accommodation;
>(3) by any person who owns or operates a place of
>public accommodation

Louisiana Counseling and Family Serv., Inc. v. Makrygialos, LLC.,

543 F. Supp.2d 359, 365 (D.N.J. 2008); Access 4 All, Inc. v. ANI

Associates, Inc., No. 04-6297, 2007 WL 2793373, * 5 (D.N.J. Sept.

25, 2007).  Defendants do not dispute their ownership of the

Showboat or whether it is a place of public accommodation.

To receive protections under the ADA, a plaintiff must prove

he is a qualified individual with a disability. Absecon

Hospitality Corp., 2006 WL at * 9.  A disability is defined as:

>(a) a physical or mental impairment that substantially

---

[18]  The Court is at a loss to explain where Plaintiff and
Defendants extrapolated their test to establish a *prima facie*
case under Title III of the ADA.  Both Plaintiff and Defendants
claim a plaintiff must establish (1) that he is a qualified
individual with a disability; (2) that he was discriminated
against in the full and equal enjoyment of the goods, services,
facilities, privileges, advantages or accommodations of a place
of public accommodation; and (3) that the discrimination was on
the basis of his disability.  The authority Plaintiff and
Defendants cite, albeit similar, does not specifically outline
these three elements.  Despite the errors, this Court will apply
the proper test.

limits one or more of the major life activities of such

individual;

(b) a record of such an impairment; or

(c) being regarded as having such an impairment

42 U.S.C. § 12102(2).  To establish a disability under the first definition, an individual must (1) identify the major life activity limited by his impairment then (2) prove how the limitation is substantial.  Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378, 382 (3d Cir. 2004).  Although Congress has not defined how a limitation is substantial, the Third Circuit opined that "[a] substantial[ ] limit[ation] is a significant restriction on a major life activity as compared to . . . the average person in the general population." Kania v. Potter, 358 Fed.Appx. 338, 341-342 (3d Cir. 2009) (quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195-96 (2002)) (internal quotations removed).  The Equal Employment Opportunity Commission (hereinafter "EEOC") regulations provide further guidance to courts and indicate that the nature, severity, duration, condition and the permanent or temporary impact of the impairment are all factors that may be considered in determining whether an impairment substantially limits a life activity. Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 782 -783 (3d Cir. 1998); 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

The Supreme Court recognized the term "major life

activities" includes walking. Absecon Hospitality Corp, 2006 WL
3109966 at * 9 (citing Bragdon v. Abbott, 524 U.S. 624, 638-39
(1998)).  The Third Circuit has not specifically delineated a
threshold number of feet that a plaintiff with an impairment must
exceed when walking in order for his impairment to not be
considered a substantial limitation of this major life activity.
Kelly v. Drexel Univ., 94 F.3d 102, 108 (3d Cir. 1996) ("It is
difficult, indeed perhaps not possible, to draw a bright line
delineating the point at which a condition affecting an
employee's ability to walk can be regarded as a disability within
the ADA").  Two cases, Kelly v. Drexel Univ., 94 F.3d 102 (3d
Cir. 1996) and Taylor v. Pathmark Stores, Inc., 177 F.3d 180 (3d
Cir. 1999), are illustrative of this issue.  In Kelly v. Drexel
University, the Court found that the plaintiff's inability to
walk a mile did not substantially limit his ability to walk.  In
reaching that conclusion, the Court cited an EEOC regulation that
illustrates when an impairment on walking is substantial.  This
regulation concludes that "an individual who, because of an
impairment, can only walk for very brief periods of time would be
substantially limited in the major life activity of walking."
Kelly, 94 F.3d at 106 (citing 29 C.F.R. app. § 1630.2(j)).  In
Taylor v. Pathmark Stores, Inc., the Court found that the
plaintiff's inability to stand or walk for over an hour was not a
substantial impairment on his ability to walk.

35

Plaintiff asserts that he is a qualified individual because he has a disability that substantially impairs and limits his ability to walk.  This impairment is arthrogryposis.  In an affidavit submitted as an Exhibit to his Motion for Summary Judgment, Plaintiff indicated that he is "disabled and suffer[s] from [a]rthrogryposis, which causes [him] to be confined to a wheelchair." (Exhibit A, Doc. 53-2).  At his deposition Plaintiff testified that arthrogryposis weakens muscles and deforms limbs. (Exhibit E, Doc. 53-8).  Plaintiff also believes he was diagnosed with this disease at birth. Id.  According to Plaintiff, arthrogryposis substantially limits his ability to ambulate without the assistance of any devices.  He testified, in relevant part, that:

Q: Do you have any ability to ambulate with the assistance of any other device, meaning are you able to walk with any type of walker or braces, do you have the physical ability to do that?

A: I could walk short distances.

Q: What do you consider to be a short distance?

A: I guess three times around this table.

Q: So if you were to completely go around this table which is actually two long tables put together to make a large conference room table, you'd be able to circle this three times before you would have to take a seat?

A: Yes.

Q: And would you use any time of assistance device or you could do that on your own?

A: I could do it on my own.

Q: I know you're not going to know exactly, and I wouldn't expect you to do, but your best estimate or approximation of the length of these two tables that is put together here where we're seated?

A: Ten feet.

Q: Ten feet in total between the two of them?

A: I guess.

(Exhibit E, Doc. 53-8). Based upon this testimony, the Court concludes that Plaintiff can walk approximately sixty feet without the assistance of any medical devices.[19]  Sixty feet is a very short distance.  An average person of the general population can certainly walk without any medical devices further than sixty feet.  Plaintiff's ability to walk unassisted for only such a short distance squarely fits the EEOC's definition of an individual with a substantial walking impairment. *See* 29 C.F.R. § 1630.2(j)(noting that the ability to walk for only brief periods of time constitutes a substantial impairment).  Furthermore, the seemingly permanent nature of Plaintiff's disability and its

---

[19]  Plaintiff testified that he can walk unassisted three times around the tables that are approximately ten feet in length.  Therefore, each complete lap is approximately twenty feet and three laps would amount to approximately sixty feet.

severe impact on his ability to walk indicates that his disease, arthrogryposis, substantially limits his daily life activity of walking.

Defendants contend Plaintiff is not a qualified individual with a disability because he did not provide any medical evidence or medical testimony of a disability.  The Third Circuit has specifically opined that "[t]here is certainly no general rule that medical testimony is always necessary to establish disability." Marinelli v. City of Erie, Pa., 216 F.3d 354, 360 (3d Cir. 2000).  Medical records are unnecessary when the symptoms and "aliments . . . are the least technical in nature and are the most amenable to comprehension by a lay jury." Id.

Plaintiff's symptoms and aliments are not technical in nature.  Although arthrogryposis is a rare disease, its symptoms are obvious in Plaintiff's situation.  According to Plaintiff's brief, the disease "has visibly deformed his limbs" and limits his ability to walk more substantial distances unassisted.[20] (Doc. 53-8 & Doc. 59).  Medical records, documentation or testimony by a doctor regarding Plaintiff's disability is unnecessary because Defendants have not raised a genuine dispute of material fact.  They have not provided any evidence, beyond bald assertions, that Plaintiff does not suffer from a

---

[20]  In his deposition testimony Plaintiff indicates he is unable to walk more than sixty feet unassisted. Doc. 53-8.

disability.  Defendants claim that Plaintiff is not disabled because he "could walk on his own for a period of time without an assisting device" is not sufficient evidence to refute Plaintiff's affidavit and deposition testimony.  In determining whether summary judgment is appropriate, the Court must ascertain whether there is a dispute of material fact.  A dispute of material fact cannot be created with mere bald assertions generated solely for the purposes of precluding entry of summary judgment.  Plaintiff has provided an affidavit stating he is disabled and uncontradicted deposition testimony indicating he cannot walk more than sixty feet unassisted.  Defendants must now provide some type of evidence to support their claim that Plaintiff is not disabled, which they fail to do. *See e.g.,* <u>Grove v. De La Cruz</u>, 407 F. Supp.2d 1126, 1131-32 (C.D. Cal. 2005) (holding that the plaintiff's declaration that she "uses a wheelchair for the majority of her mobility needs" was sufficient evidence for the court to conclude that the plaintiff was disabled" and that defendant's mere assertion, without any evidence, that plaintiff was not disabled was not sufficient to create a genuine issue of material fact and preclude entry of summary judgment). Consequently, the Court concludes there is no dispute of material fact and that Plaintiff is a qualified

individual with a disability.[21]

Defendants next contend that Plaintiff cannot prove he was discriminated against on the basis of his disability.  While at the Showboat Plaintiff states he encountered barriers to access and was "discriminated against on the basis of [his] disability."  Defendants disagree and argue that Plaintiff failed to encounter any barriers of access because he did not stay overnight in a hotel room and could not recall the names of the restaurants he visited or specific locations of any barriers.  Defendants' contentions are incorrect.  Plaintiff's deposition testimony contains sufficiently detailed information of the barriers of access encountered.  Plaintiff also submitted an expert report with his Motion for Summary Judgment describing the barriers Plaintiff faced. (*See* Exhibit C, Doc. 53-4).  Furthermore, a plaintiff does not need to encounter all possible barriers. *See* Absecon Hospitality Corp., 2006 WL 3109966 at * 8-9 (citing Steger v. Franco, Inc., 228 F.3d 889, 894 (8th Cir. 2000)).  Plaintiff also demonstrated a "causal connection" between the alleged discrimination and his disability.  This connection affected his ability to fully utilize and enjoy Defendants'

---

[21]  This Court notes that in a different ADA related claim before the Eastern District of New York, the court's opinion noted that Plaintiff suffers from arthrogryposis and is disabled. Brown v. County of Nassau, No. 07-4811, 2010 WL 3487256, at * 2, ___ F. Supp. 2d ___, ___, (E.D.N.Y. Sept. 3, 2010) (noting the absence of a dispute regarding whether plaintiff was a qualified individual).

property. Bowers v. Nat'l Collegiate Athletic Ass'n, 118 F. Supp.2d 494, 517 (D.N.J. 2000). Plaintiff is bound to a wheelchair and all barriers he encountered were related to utilization of a wheelchair. The Court, therefore, concludes that Plaintiff established a *prima facie* case of discrimination and summary judgment will be accordingly entered.

### D. Waiver of Readily Achievable Defense

The ADA provides a readily achievable defense for owners of facilities that existed prior to the ADA's enactment. *See* 42 U.S.C. § 12182(b)(2)(A)(iv). This defense only requires a defendant to remove "architectural barriers . . . where such removal is readily achievable." Id. Plaintiff argues that Defendants waived this defense because they failed to comply with the Court's Amended Scheduling Order, Doc. 37. This Order required Defendants to "identify if they are making an economic claim or defense in the case. . . . [and] failure to affirmatively raise the issue by February 3, 2010 shall result in a waiver of the defense." (Doc. 37). Defendants did not assert an economic defense by February 3, 2010. Defendants contend they did not waive the readily achievable defense because it encompasses more than economics. *See* 42 U.S.C. § 12181(9) (defining readily achievable as "easily accomplishable and able to be carried out without much difficulty or expense"). Defendants' view is correct. Expenses aside, a modification made

41

for purposes of compliance with the ADA may still arise to such a level of difficulty that it would no longer be readily achievable. *See* <u>Speciner v. NationsBank, N.A.</u>, 215 F. Supp. 2d 622, 633 (D.Md. 2002) (noting several non-economic factors for why the installation of a ramp was not readily achievable); *see also* <u>Gathright-Dietrich v. Atlanta Landmarks, Inc.</u>, 452 F.3d 1269, 1275 (11th Cir. 2006) (opining that removal of a barrier was not readily achievable for several non-economic reasons). The Court, therefore, concludes that Defendants did not waive the readily achievable defense and will deny Plaintiff's Motion for Summary Judgment.[22]

## V. CONCLUSION

For the reasons expressed above, Defendants' Motion for Summary Judgment [50] will be denied, and Plaintiff's Cross-Motion for Summary Judgment [53] will be granted in part and denied in part.  An appropriate order will be entered.


Date: <u>December 16, 2010</u>                  <u>s/ Noel L. Hillman</u>
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.

---

[22] The plaintiff has the burden of production to prove the necessary modifications for compliance with the ADA are readily achievable. <u>ANI Assoc., Inc.</u>, 2007 WL 2793373 at * 6.  Once satisfied, the defendant has the ultimate burden of persuasion that the modification is not readily achievable.  Plaintiff did not introduce any evidence suggesting that any ADA mandated modifications would be readily achievable.